IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YASMIN MONTANO,

       **Plaintiff,**

vs.                                                   Civ. No. 16-065 JCH/KK

**MEGAN BRENNAN, POSTMASTER GENERAL,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court on *Defendant's Motion for Summary Judgment* [Doc. 18], in which the Defendant argues that Plaintiff has failed to exhaust her administrative remedies with regard to all but one act of alleged discrimination/harassment, which Defendant contends does not constitute an adverse employment action. The Court has reviewed the motion, response, and reply briefs and concludes that the motion should be granted as further explained herein.

## PLAINTIFF'S COMPLAINT AND PROCEDURAL HISTORY

       This is Plaintiff Yasmin Montano's second lawsuit against the United States Postal Service for claims arising out of her employment. The Court will refer to her first case, *Montano v. Brennan*, Civ. No. 14-634 WJ/GJF, as "*Montano I*," and this pending case as "*Montano II*."

       In *Montano I*, Montano alleged that her employer, the Defendant, the Postmaster General of the United States Postal Service, through her employees, discriminated against and harassed Montano because of her sex, and then retaliated against her because of her EEO activity. Montano, who had been employed by the Postal Service since 1985, asserted that on July 11,

2011, Defendant appointed her to the position of Postmaster Santa Fe, New Mexico, and shortly thereafter appointed Michael Flores as her supervisor as Manager of Postal Operations (MPOO). Montano also worked under another MPOO, Humberto Trujillo. It appears that most of Montano's allegations of harassment, discrimination, and retaliation centered around Flores and Trujillo. In *Montano I*, Montano asserted claims against Flores and Trujillo for gender-based discrimination and harassment, as well as retaliation. She asserted no claims of disability discrimination or failure to accommodate an alleged disability. Montano voluntarily dismissed her two claims for violation of the Postal Service employment and labor manual, and the court granted summary judgment in favor of the Defendant on her claims for gender-based discrimination and retaliation. *Montano I*, Docs. 86 and 121. That left Montano's claims for hostile work environment. The court initially denied summary judgment on these claims, but allowed the Defendant to file a second motion for summary judgment. *Id.*, *Montano I*, Docs. 120 and 129. In the meantime, Montano had filed the present case, which the parties jointly moved to consolidate with *Montano I*. *Id.*, Doc. 128. The court denied the motion to consolidate, but it granted summary judgment to Defendant on the hostile work environment claims. *Id.*, Docs. 129 and 134. The court entered judgment in favor of the Defendant. *Id.*, Doc. 135. All of her claims disposed of, Montano appealed, but the Tenth Circuit affirmed the district court. *Id.*, Docs. 136 and 141.

In her Complaint in this case, *Montano II*, Montano makes factual allegations that largely mirror those set forth in her complaint in *Montano I*. The most notable exception is her assertion that Defendant harassed and discriminated against her on the basis of her disability by sending her a letter requesting that she attend a fact finding while she was on medical leave. She alleges that on July 11, 2011, Defendant appointed her to the position of Postmaster Santa Fe, New

2

Mexico, and shortly thereafter appointed Michael Flores as her supervisor as Manager of Postal Operations. [Doc. 1] Montano contends that her employer, the Defendant, the Postmaster General of the United States Postal Service, through her employees, discriminated, harassed, and retaliated against Montano in her employment because of Montano's disability and prior EEO activity. In *Montano II*, Montano asserts claims against Defendant for discrimination based on disability. She alleges violations of Section 504 of the Rehabilitation Act of 1973 (Count I—discrimination and failure to accommodate, Count V—retaliation) and the Americans With Disabilities Act of 1990 (Count II—discrimination and failure to accommodate, Count III-disability harassment, and Count IV—medical inquiry prohibition).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party moving for summary judgment has the burden to show "the lack of a genuine issue of material fact." *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))). Once the moving party meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

The nonmovant may not rest on his pleadings or "rely on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986)); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Instead, the nonmovant is required to set forth specific facts, by referencing affidavits, deposition transcripts, or exhibits, from which a rational trier of fact could find for him. Fed R. Civ. P. 56(c)(1); *see also Ascend Media*, 531 F. Supp. 2d at 1295 (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)). To survive summary judgment, "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

## **UNDISPUTED MATERIAL FACTS[1]**

1.  Plaintiff Yasmin Montano began working for the United States Postal Service (USPS) in June 1985. *Montano II* Complaint (Doc. 1), ¶ 8.

2.  From 2001-2010, Montano served as one of three Managers of Postal Operations ("MPOO") within the New Mexico District, overseeing Postmasters around New Mexico. *Montano I* Complaint (Doc. 1), ¶ 10.

---

[1] Based upon the briefs and the attached exhibits, the Court sets forth the undisputed material facts that are relevant to the current motion. The Court notes that under our Local Rules, a party opposing a motion for summary judgment who contends that there is a genuine issue of material fact as to one of the movant's asserted material facts "must refer with particularity to those portions of the record upon which the opposing party relies," and "[a]ll material facts set forth in the statement of the movant will deemed admitted unless specifically controverted." D.N.M. LR-56.1(b). In her response, Montano did not specifically controvert any of the Defendant's material facts by referring to portions of the record.

3.   In 2010, the New Mexico District was consolidated into the Arizona District, and Montano's position was eliminated. Montano was not selected for an MPOO position in the newly consolidated District. On July 11, 2011, Defendant hired Montano as the Postmaster of Santa Fe, New Mexico. *Montano II* Complaint, ¶ 9.

4.   On July 18, 2011, Defendant appointed Michael Flores as the MPOO 25 and placed him in a supervisory position over Plaintiff. *Montano II* Complaint, ¶ 10. Montano alleges that almost immediately, Flores began to harass and discriminate against her. *Montano II* Complaint, ¶ 11-16.

5.   In 2012, Montano began receiving treatment with her primary care physician, Isabel Lopez-Colberg, M.D., and a psychologist, Dr. Anne Hammond, for complaints of extreme job stress and anxiety arising from the work environment. *Montano II* Complaint, ¶17.

6.   On March 12, 2012, Montano was diagnosed with work related stress and was later diagnosed with severe anxiety and depression. *Montano II* Complaint, ¶18.

7.   On June 8, 2013, Montano went on FMLA leave due to severe stress and anxiety caused by the work environment. *Montano II* Complaint, ¶ 26.

8.   Almost two years later, on May 26, 2015, Flores sent Montano a letter ordering her to a fact finding interview to investigate her extended absence on June 3, 2015. *Montano II* Complaint, ¶ 32; Letter, Doc. 18-1.

9.   On June 2, 2015, counsel for the Defendant informed Plaintiff's counsel that Montano was not required to attend the fact finding interview. *See* E-mail, Doc. 18-2.

10.   Montano did not attend the fact finding on June 3, 2015.

11.   On June 23, 2015, Montano requested an appointment with a Dispute Resolution Specialist. Information for Per-Complaint Counseling, Doc. 18-3.

12. In the Information for Pre-Complaint Counseling form, Montano alleged discrimination on the basis of a physical and mental disability (severe anxiety and depression), and as a result of her sex (female). *Id.*

13. Montano stated that on May 26, 2015, she received a request from her manager, Flores, to participate in a Fact Finding on June 3, 2015, after *Montano I* had been filed, and while she was on disability leave. *Id.*

14. On September 22, 2015, the EEO informed Montano of her right to file a formal EEO complaint. *See* Notice of Right to File, Doc. 18-4. In the Notice, the EEO described the following acts of discrimination raised by Montano:

> a. "On 5/26/15, manager Mike Flores sent you a letter to participate in a fact finding scheduled for 6/3/15."
> b. "On 3/8/14, you were given a Letter of Warning (LOW) which was appealed and not contested by the USPS."
> c. "On 6/8/13, you left work at the USPS due to medical conditions that lead to your disability and you have applied for medical retirement."
> d. "You also allege that you have not been able to heal as the USPS management has harassed you through your medical disability."

> Doc. 18-4.

15. On October 6, 2015, Montano filed a formal EEO Complaint. *See* EEO Complaint, Doc. 18-5.

16. The Postal Service initiated an EEO investigation, which resulted in an EEO Dispute Resolution Specialist's Inquiry Report. Doc. 18-6. It lists Montano's complaints as:

> 1. On 6/8/13, Counselee left work at the USPS due to medical conditions that lead to her disability and Counselee has applied for medical retirement. Counselee alleges she has not been able to heal as the USPS management has harassed her through her medical disability.
> 2. On 3/8/14, Counselee was given a Letter of Warning (LOW) which was appealed and not contested by the USPS.
> 3. On 5/26/15, Manager Mike Flores sent a letter to the Counselee to participate in a fact finding scheduled for 6/3/15.

Doc. 18-6 at p.1 of 3. The Report further states that "Counselee stated thru her Attorney that the allegations dated 6/8/13 and 3/8/14 are background information to show continued actions of harassment by the USPS." Doc. 18-6 at p.3 of 3.

17. On October 26, 2015, the EEO issued its final decision dismissing Montano's EEO Complaint. Dismissal of Formal EEO Complaint, Doc. 18-7.

18. In its Dismissal, the EEO explained the only issue accepted for investigation was: "1) On May 26, 2015, your manager sent you a letter to report to a fact-finding (investigative interview) scheduled for June 3, 2015." Doc. 18-7 at p.1 of 4. The Dismissal also set forth Montano's rights of appeal. *Id*. at p.4 of 4.

## DISCUSSION

### I. Law Regarding Exhaustion of Administrative Remedies

Federal courts do not have subject-matter jurisdiction to review employment discrimination claims not exhausted administratively. *Shikles v. Sprint/United Mgmt. Co*., 426 F.3d 1304, 1317 (10th Cir. 2005); *McBride v. CITGO Petroleum Corp*., 281 F.3d 1099, 1105 (10th Cir. 2002) (concluding that exhaustion is required for employees asserting an ADA claim, even in the private sector); *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997) (concluding that like the requirements for suits under Title VII, the exhaustion of administrative remedies is a jurisdictional prerequisite for instituting a Rehabilitation Act cause of action in federal court); *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("[E]ach discrete [retaliatory or discriminatory action] constitutes its own unlawful employment practice for which administrative remedies must be exhausted.") (quotation omitted).

The Code of Federal Regulations sets forth the procedures that a federal employee must follow In order to exhaust her administrative remedies and preserve her claim for disability discrimination. For example, 29 C.F.R. § 1614.105(a) requires an aggrieved employee to consult an EEO counselor before filing a formal complaint in order to try to informally resolve the matter; further, the employee must initiate such consultation within 45 days of the alleged discriminatory action by the employer or within 45 days of the effective date of a personnel action. "The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *Woodman*, 132 F.3d at 1342; *Jones v. UPS*, 502 F.3d 1176, 1185 (10th Cir. 2007). If the parties do not resolve the issue, a plaintiff must file a complaint of disability-based discrimination (EEO complaint) to an EEO counselor within forty-five days of any adverse action against her. 29 C.F.R. § 1614.105(a)(1).

## II. Exhaustion of Administrative Remedies by Montano

First, the Court notes that Montano's claims regarding sex discrimination and harassment prior to June 8, 2013 were litigated and adjudicated in *Montano I*. Montano did not raise claims of disability discrimination or harassment in that lawsuit.

Second, as discussed above, an aggrieved employee must initiated an EEO consultation within 45 days of the alleged discriminatory or unlawful action by the employer. *See* 29 C.F.R. § 1614.105(a). In this case, on June 23, 2015, Montano requested an appointment with a dispute resolution specialist, which means that her EEO complaint is limited to alleged discriminatory actions occurring on or after May 10, 2015. The only alleged discriminatory act that Montano alleges occurred in this time frame is that on May 26, 2015, she received a request from her

8

manager, Flores, to participate in a June 3, 2015 fact finding, while Montano was on disability leave. In fact, the formal EEO decision explained that the only issue accepted for investigation was the sending of the May 26, 2015 letter, while the EEO Dispute Resolution Specialist's Inquiry Report notes that other instances of alleged illegal actions by the employer in 2013 and 2014 were set forth as background information to demonstrate continued actions of harassment by the USPS. This supports Defendant's position that the only act of alleged disability discrimination or harassment for which Montano has successfully exhausted her administrative remedies is the sending of the May 26, 2015 letter asking her to appear at a fact finding on June 2, 2015.

Third, in her response to the motion for summary judgment, Montano fails to explain how she timely exhausted any claim of disability discrimination or harassment other than the discrete act of sending the May 26, 2015 letter. Montano argues that she reported in the Information for Pre-Complaint Counseling that she suffered from continued discrimination and harassment by Defendant, which culminated in her departure from work on June 8, 2013 and application for "medical retirement." Doc. 19 at 10. However, by the time that Montano initiated that EEO process, she had been away from work for a little over two years, and the sending of the letter was the only harassment that she alleged had occurred during that time. Montano contends in conclusory fashion and without citation to any supporting authority that "[t]his is sufficient to meet the requirements of exhaustion for a hostile work environment claim." Doc. 19 at 10.

The Court disagrees with Montano. The record as presented shows no evidence that prior to June 8, 2013, Montano was considered disabled. The record also does not support a conclusion that Montano had alleged or exhausted any claim of disability discrimination before

9

that time. After Montano left her job due to disability on June 8, 2013, she had very limited contact with Defendant. The single contact for which she has exhausted her administrative remedies—the May 26, 2015 letter—cannot by itself create a hostile work environment, separated as it is from other alleged incidents and contacts with Defendant by a period of approximately two years. However, Montano has exhausted her administrative remedies with regard to the letter. Thus, the Court turns to the question of whether a claim based on the May 26, 2015 letter can withstand summary judgment.

### III.    The Exhausted Claim is not an Adverse Employment Action, and Therefore Montano's Claims for Discrimination and Retaliation Must Fail

For purposes of the motion currently before the Court, the Defendant does not dispute that Montano is an individual with a qualifying disability under the Rehabilitation Act. However, Defendant contends that Montano cannot show that it discriminated or retaliated against her by sending her the May 26, 2015 letter. The Court agrees.

The prima facie case for disability discrimination and the prima facie case for retaliation share a common element: the employee must demonstrate that she suffered an adverse employment action. *Conroy v. Vilsack*, 707 F.3d 1163, 1171, 1181 (10th Cir. 2013). "An adverse employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Although what constitutes an "adverse employment action" is inherently a fluid and fact-based consideration, "a mere inconvenience or an alteration of job responsibilities will not suffice." *Id*. at 1239 (quotations omitted). It is true that warning letters and reprimands can be adverse employment

actions. *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir.2005). "A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment—for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *See id*.

The May 26, 2015 letter does not rise to this level. There is no evidence that the letter caused a significant change in Montano's employment status; indeed, there is no evidence that the letter had any impact on her status whatsoever. Montano was on medical leave before she received the letter, and she remained on medical leave thereafter. Through counsel, Defendant informed Montano that she was not required to attend the fact finding, and in fact she did not attend. Thus, Montano's claims of disability discrimination and retaliation must fail.[2]

### III. Failure to Accommodate Montano's Disability

Montano contends that on two occasions, Defendant failed to accommodate her disability. *See* Doc. 19 at 5, 17-18. First, she claims that her April 25, 2013, letter to John DiPeri [Doc. 19-4], asking to be sent to a different job was a request for accommodation of her disability. However, the letter does not, on its face, present itself as a request for accommodation. It does not state that she is disabled and does not mention that she is seeking accommodation for any disability. Further, Montano has placed no evidence in the record that if the transfer had been granted, this would have been a reasonable accommodation of her disability.

---

[2] Having concluded that Montano did not suffer an adverse employment action, the Court does not address Defendant's other arguments regarding disability discrimination, including whether Defendant issued the letter for an unlawful, discriminatory reason, and whether Defendant's legitimate business reason for sending the letter was pretextual.

Montano's second alleged request for accommodation is an August 14, 2014 email from Montano to Lerene Wiley requesting notification of available jobs "out of district" and access to "eCareers." [Doc. 19-1].³ It appears that Defendant did not place Montano in any job that was "out of district," as she never returned to work.

Defendant argues that Montano has failed to exhaust her administrative remedies for a claim that it has failed to accommodate her disability. As discussed above, "a plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). Courts must liberally construe EEOC charges in determining whether remedies have been exhausted as to a particular claim. *Id*. However, a court's inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge." *Id*. "In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]" *Id*.

In this case, the issue presented is whether "an investigation into whether [Defendant] failed to accommodate" Montano's disability can "reasonably be expected to follow" from Montano's Information for Pre-Complaint Counseling form [Doc. 18-3] or her EEO Complaint of Discrimination in the Postal Service [Doc. 18-5]. *See Jones*, 502 F.3d at 1187. A thorough review of both documents, including both the information contained in the boxes as well as the written narratives, reveals nothing that would have reasonably prompted an investigation into whether Defendant failed to accommodate a request by Montano for an accommodation. In

---

³ Defendant appears to have had difficulty locating this email among the exhibits attached to Montano's response, and no wonder. Although Montano refers to the email as Exhibit AA, she failed to label it as such.

addition, the Court notes that both the request for counseling and the formal charge were filed in June and October of 2015, respectively, which is significantly more than 45 days after the two alleged instances in which Defendant failed to accommodate Montano.

Thus, the Court concludes that Montano failed to exhaust administrative remedies for her reasonable accommodation claim.

### IV. Disability Harassment

To establish a prima facie case of hostile work environment under the ADA, plaintiff must establish: 1) membership in a protected group; 2) unwelcome harassment; 3) harassment based on his disability; 4) harassment affected a term, condition, or privilege of employment; and 5) defendant knew or should have known of the harassment and failed to take proper remedial action. *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005); *Lanman v. Johnson County*, 393 F.3d 1151, 1155 (10th Cir. 2004). In order to affect a term, condition, or privilege of employment, the harassment must be pervasive. *MacKenzie*, 414 F.3d at 1280. A showing of pervasiveness requires more than a few isolated incidents of disability-based animosity. *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). "Instead, there must be a steady barrage of opprobrious . . . comments." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). Although the pervasiveness and severity inquiry is usually a question of fact, *see O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999), summary judgment is appropriate if the alleged harassment was not sufficiently pervasive or severe to support a hostile work environment claim. *See, e.g., Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir. 1997) (concluding five separate incidents of allegedly offensive comments either directed at the plaintiff or made in her presence were not sufficiently pervasive to support a hostile work environment claim); *Morris v. City of Colorado Springs*, 666 F.3d 654, 666 (10th

Cir. 2012) (determining there was insufficient evidence for a jury to find that the alleged harassment was pervasive); *cf. Chavez*, 397 F.3d at 833-36 (finding sufficient evidence of a hostile work environment based upon extensive sexual discrimination where there was evidence that the plaintiffs had been subjected both to a "number of gender-based incidents" occurring over a long period of time, including sexual propositions, and "multiple incidents of hostile and physically threatening conduct").

Here, Montano became disabled as of June 8, 2013. The sole incident of alleged harassment for which she has exhausted her administrative remedies is the sending of the May 26, 2015 letter asking her to participate in a fact finding regarding the continuation of her employment, which she claims Defendant should have known would cause her great emotional harm.[4] However, Defendant ultimately did not require Montano to attend the fact finding, and this single letter simply cannot rise to the level of an action that affected a term, condition, or privilege of her employment. Thus, Defendant is entitled to summary judgment on this claim.

V. **Claim for Violation of the Rehabilitation Act and ADA's Prohibition of Medical Inquiries**

In Count IV of her Complaint [Doc. 1 at 8-9], Montano sets forth a claim for violation of the prohibition against medical inquiries set forth in the ADA and Rehabilitation Act. Defendant's motion for summary judgment [Doc. 18] does not address this claim, and the Court can find nothing in the written record addressing the status of Count IV. As this is the sole claim

---

[4] Montano also claims that Defendant harassed her by issuing her a March 8, 2014 letter of warning ten months after she left work on June 8, 2013. Even if Montano exhausted her administrative remedies as to this event as well, it still would not be enough to rise to the level of a cognizable harassment claim.

14

remaining in the case, the Court directs the parties to submit a Joint Status Report regarding the status of Count IV no later than **March 16, 2015**.

      **IT IS THEREFORE ORDERED** that:

(1)    *Defendant's Motion for Summary Judgment* [Doc. 18] is **GRANTED**;

(2)    Defendant is entitled to partial summary judgment in its favor on Plaintiff's claims for disability discrimination, failure to reasonably accommodate, disability harassment, and retaliation as set forth in Counts I, II, III, and V of the Complaint;

(3)    The parties must file a Joint Status Report regarding the status of Count IV no later than **March 16, 2015**.

_____
**UNITED STATES DISTRICT JUDGE**